IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| MILLENTINE COATES,<br><br>    Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY and<br>XYZ CORPORATION,<br>    Defendant. | CASE NO. 3:18-cv-35<br><br>ACTION FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

FIRST AMENDED COMPLAINT

Plaintiff, by and through undersigned counsel, alleges a complaint as follows:

1. This case was originally filed in the Superior Court of the Virgin Islands asserting jurisdiction pursuant to 4 V.I.C. section 76 and the Virgin Islands long arm statute contained in 5 V.I.C. section 4903.

2. The Defendant, Ford Motor Company removed this case to the District Court of the Virgin Islands pursuant to 28 U.S.C. section 1446 alleging that this court has diversity jurisdiction pursuant to 28 U.S.C. section 1332 because this suit is as between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

3. The Plaintiff, Millentine Coates, is a resident and citizen of St. Thomas, U.S. Virgin Islands who in 2009 purchased a 2002 Ford Explorer VIN# 1FMZU73E72UC54050 and now demands trial by jury of the within action.

4. Ford Motor Company ("Ford") is a Delaware corporation with its principal place of business in Dearborn, Michigan.

5. Defendant, XYZ Corporation (hereinafter "XYZ"), is a fictitious name for a real corporation, the identity of which is presently unknown, that manufactured and sold airbags to Ford for further installation in its 2002 Ford Explorer automobiles.

6. Ford is an American multinational automaker founded in 1903 by Henry Ford. Ford is a global designer, manufacturer, and producer of vehicles and one of the largest corporations in the world, and sells automobiles and commercial vehicles under the Ford brand.

7. Ford is the second largest US based automaker and the fifth largest in the world based on 2010 vehicle sales. Ford is the eighth-ranked overall American-based company in the 2010 Fortune 500 list, based on global revenues in 2009 of $118.3 billion. In 2008 alone, Ford produced 5.532 million automobiles and employed workers at approximately 90 plants and facilities worldwide.

8. Plaintiff has not been able to ascertain whether Ford is registered to do business in the United States Virgin Islands or maintains a resident agent for service of process in the United States Virgin Islands, but on information and belief Ford conducts regular and systematic business in the Virgin Islands that results in the sale of its automobiles to the Virgin Islands consuming public and fleets of automobiles to rental car companies.

9. There has never been a time in the past 60 years were Ford did not sell, distribute or market its new and used vehicles in the United States Virgin Islands. From a time before the 1950's through the present time, Ford has consistently, purposefully and systematically marketed and sold its vehicles either directly or through authorized representatives within the U.S. Virgin Islands and induced consumers within the Virgin Islands to purchase its vehicles.

10. Ford has a national dealership network which includes dealerships in the US Virgin Islands that will market and sell new and used Ford products, service Ford products, honor Ford Motor Company warrantees, and carry out necessary vehicle recall work that Ford requires.

11. That Ford derives a portion of its gross income from the sales, services, parts and repair work that is derived from the activities of its dealerships in the US Virgin Islands.

12. Ford keeps records of how many vehicles are shipped to each state, and how much revenue is generated from each state including the US Virgin Islands.

13. Ford has been a party in numerous cases and has come into the courts of the Virgin Islands to answer claims about the failure of products in the US Virgin Islands.

14. That as a result of the business of supplying fleets of cars to rental car companies located in the Virgin Islands, and its contracts with Ford dealerships in the Virgin Islands, Ford is obligated by contract and warrantee to defend, indemnify, and hold harmless these dealerships and fleet purchasers from harm as a result of defects in Ford vehicles.

15. Ford has honored its duty to indemnify, defend and hold harmless Ford dealerships and rental car companies by providing and paying for, inter alia, the cost of defense of actions brought against them.

16. That in *Banks vs. International Rental and Leasing*, a case that was formerly docketed in this court Ford brought into the Virgin Islands its specially retained lawyers to represent the defendant and had them appear pro hac vice. Ford paid all costs and fees for its defense team and defended and held harmless the defendant rental car company, International Rental and Leasing.

17. Ford has either been a disclosed or an undisclosed party seeking relief or review in numerous cases where it has purposely availed itself of the jurisdiction of the courts of the Virgin Islands by serving as the petitioner, appellant, or removing party in such cases.

18. Ford spends millions of dollars per year in marketing its products in North America including the United States Virgin Islands. This advertising takes the form of television, magazine, internet, and brochure advertising all designed to promote the marketability of Ford's products, within and without the Virgin Islands.

19. Ford designs, manufactures, tests, assembles, sells, distributes, and places Ford model vehicles and their component parts into the stream of commerce, such as the subject vehicle, involved in the incident made the basis of this suit. Over the many years that Ford has sold vehicles in the US Virgin Islands, many Ford Explorers have been provided by Ford directly to Ford dealerships in the US Virgin Islands and to Ford customers. The Ford Explorer model vehicle has been marketed directly to Virgin Islands consumers.

20. . Ford requires its U.S. Virgin Islands dealerships to advertise within the U.S. Virgin Islands and Ford shares in the cost of these Virgin Islands advertisements for Ford products.

21. Ford jointly participates in the interactive websites of the Ford dealerships located within the U.S. Virgin Islands.

22. Ford certifies mechanics who work at the Ford dealerships in the U.S. Virgin Islands.

23. Ford provides certification training for mechanics who work at the Ford dealerships at locations in the Virgin Islands.

24. Ford oversees aspects of its product warranty process within the U. S. Virgin Islands.

25. Ford sends technical service bulletins regarding work procedures related to the subject vehicle into the U.S. Virgin Islands.

26. Ford sends recall notices related to safety defects in the subject vehicle into the U.S. Virgin Islands.

27. Ford directs Virgin Islands customers to approved Ford service centers to have recall work performed on the subject model vehicle initially sold into various states but located in the Virgin Islands.

28. Advertisements and marketing materials were and are targeted to Virgin Islands residents to entice them to purchase Ford vehicles and Ford services, including the subject model vehicle and have been successful in accomplishing the objective of obtaining sales of the Ford Explorer.

29. For decades, Ford has made and distributed dozens upon dozens of advertisements or commercials or other marketing materials touting the safety of Ford vehicles and how much Ford cares\cared about safety. Ford did this in all 50 states including the US Virgin Islands. Ford did this advertising to entice customers and ultimate consumers to (1) purchase Ford vehicles-whether used or new; (2) to drive Ford vehicles-whether used or new; and (3) to ride in Ford vehicles-whether used or new. Ford conducted these advertising campaigns and knew that consumers would rely upon its statements when deciding whether to purchase a Ford vehicle, whether to drive a Ford vehicle, and whether to ride in a Ford vehicle.

30. The Plaintiff, Millentine Coates, over the years has seen and heard Ford's advertisements and commercials and has been enticed by these and other marketing materials touting the safety of Ford vehicles and how much Ford cared/cares about safety. Absent being exposed to such advertising plaintiff would not have purchased the Ford Explorer that is the subject of this lawsuit.

31. Approximately two weeks after plaintiff purchased the Ford Explorer that is the subject of this case, plaintiff received from Ford a recall notice that required plaintiff to take the vehicle to the Ford dealership which displays the Ford logo, on St. Thomas. Plaintiff took the letter from Ford to the dealership and the Ford dealership accomplished whatever repairs had to be made.

32. Ford is personally subject to specific jurisdiction in this Court because Ford is subject to the Virgin Islands long-arm statute by doing business in the U.S. Virgin Islands and by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in the Virgin Islands.

33. Also, the claims against Ford in this case are linked to Ford's conduct.

34. Ford placed the subject vehicle into the stream of commerce where it ultimately ended up in the U. S. Virgin Islands.

35. The key elements of the facts of this suit occurred in the U.S. Virgin Islands.

36. Ford has purposefully availed itself in the Virgin Islands, because Ford's contacts with the U.S. Virgin Islands entities relate to the sale of vehicles and all of the conduct associated with such vehicle sales and this civil action is related to and connected with the sale of a Ford vehicle, and because due process and fair play and substantial justice are honored by this civil action going forward in this Virgin Islands Court.

37. There is little or no burden on Ford litigating this case in this Virgin Islands Court. In contrast, it would be a tremendous burden and great inefficiency and unnecessary delay imposed on the Plaintiff to litigate this case in another forum because the Virgin Islands

has an interest in overseeing this litigation which involves injuries to Virgin Islands residents and defective products used in the Virgin Islands.

38. The efficient resolution of this civil action can only go forward in the U. S. Virgin Islands, and public policy favors resolution of this dispute in this Virgin Islands Court.

39. Ford cannot deny personal jurisdiction because Ford placed the subject vehicle into the stream of commerce under circumstances such that Ford should reasonably anticipate being haled into court in the U.S. Virgin Islands.

40. In short, Ford is in the business of the manufacture of vehicles, including the vehicle which caused the injuries complained of herein. It also derives substantial profit from the U. S. Virgin Islands. Ford, in no way, shape, or form, ever restricted the vehicle which caused the serious injuries from being distributed, sold, or used in the U. S. Virgin Islands or from Virgin Islands residents. Ford has purposefully availed itself of the privilege and benefits of conducting activities within the Virgin Islands.

41. Accordingly, Ford is therefore subject to be sued in Virgin Islands courts, and exercise of personal jurisdiction pursuant to Virgin Islands long arm statute is, among other things, consistent with due process because Defendant has purposefully availed itself of the privilege of doing business in the forum.

42. That Ford manufactures and distributes to members of the public, including the Plaintiff, the Explorer in such a manner that the product is expected and does reach the consumer substantially without change in the condition in which it was manufactured when sold.

43. That Defendants Ford and XYZ have at all times material hereto, despite superior knowledge, actual or implied, failed to warn the consuming public of the lack of crash

worthiness of the Explorer, and of the danger posed by this lack of crash worthiness, and the fact that the air bag contained in the vehicle would spontaneously deploy.

44. That on September 22, 2016, Millentine Coates was properly operating her 2002 Ford Explorer (hereinafter the "Explorer") within the posted speed limit and traveling east on Weymouth Rhymer Highway in St. Thomas, Virgin Islands.

45. That as Plaintiff approached the top of Raphune Hill, the Explorer's front driver airbag exploded with extreme force resulting in the Explorer filling up with smoke, Plaintiff losing control of the Explorer and causing a crash (hereinafter the "Incident").

46. Upon information and belief, at the time of the Incident, the Explorer and its components at issue in this action were in the same condition as they were at the time that they left the Defendant Manufacturers' control.

47. Ms. Coates required hospitalization for treatment of multiple injuries suffered to her knees, ankles, her legs, and lower torso, and continues to undergo medical care and therapy for her injuries.

48. The injuries suffered by Ms. Coates were the direct and proximate result of the defective condition of the Explorer manufactured by the Defendant, and the defects and unsafe conditions created by its defective airbag.

49. Accordingly, as a result of the defective and unreasonably dangerous condition of the Explorer at the time of the Incident, on September 22, 2016, Millentine Coates has suffered severe and permanent injuries to her person, pain of the mind and body, loss of income and earning capacity, and has incurred and will continue to incur medical expenses all to her loss and damage.

50. That Defendants' failure to warn of the instability of the Explorer, its lack of crash worthiness, and other risks of which the Defendants were aware or which Defendants should have been aware, rendered the Explorer defective.

51. As detailed herein, the vehicle contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

52. Defendant knew or should have known of safer alternative designs which would have prevented the serious injuries to the Plaintiff.

53. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question and determined it to be unreasonably dangerous and defective, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

    a. The vehicle fails to provide proper safety in narrow, frontal impacts;

    b. The vehicle fails to protect the lower legs in narrow, frontal impacts;

    c. The vehicle fails to reinforce the toe-board, foot-well and floorpan area properly;

    d. The vehicle fails to use knee airbags that have been used on production vehicles since 1998;

    e. The vehicle fails to use 100 mm knee bolsters that have been in production vehicles since the 1980's;

    f. The vehicle fails to use boron steel that has been in vehicle since the 1990's;

    g. The vehicle violates principles of crashworthiness;

    h. The vehicle violates the consumer expectation test because consumers expect

      their lower legs to be protected in frontal impacts;

    i. The vehicle violates the consumer expectation test because consumers expect the manufacturer to conduct proper and thorough testing and engineering analysis to ensure the lower legs are protected; and

    j. The vehicle defects were the direct, producing and proximate cause of the injuries and damages in question.

54. That as a direct and proximate result of Defendants' action or non-action, Defendants' are strictly liable to the Plaintiff for all damages suffered, past, present, and future.

## COUNT II

55. All allegations of Count I are incorporated herein by reference as if set forth at length.

56. That the Defendants expressly and impliedly warranted, in manufacturing and/or selling the Ford Explorer that it was in a safe and reasonable condition, free of defects, and that purchasers, like Plaintiff, were free to rely upon the safety of its automobiles.

57. That the action or non-action of Defendants constitutes a breach of warranty for which the Defendants are strictly liable.

## COUNT III

58. All allegations of Counts I and II are incorporated herein by reference as if set forth at length.

59. That Defendants knew or should have known that the failure to give adequate warnings or to correct patent or known defects rendered the Explorer unreasonably dangerous to consumers.

60. That despite superior knowledge, direct or indirect, the Defendants negligently or intentionally failed to act in accord with the standards required of a reasonable manufacturer under like circumstances, all to the damage of the Plaintiff.

61. That Defendant was negligent in the following respects:

    a. The Defendant failed to test the load cells on the lower legs;

    b. The Defendant failed to evaluate using a knee airbag;

    c. The Defendant failed to evaluate using a 100 mm bolster;

    d. The Defendant failed to evaluate using boron or UHSS in the toe-board, foot-well or floor-pan area;

    e. The Defendant failed to conduct thorough engineering analysis of the toe-board, foot-well, floor-pan and knee bolster area; and

    f. The negligence was the direct, producing and proximate cause of the injuries and damages in question.

62. That as a direct and proximate result of the negligent or intentional acts or failure to act by the Defendants, Plaintiff has suffered severe and permanent injuries to her person, pain of the mind and body, loss of income and earning capacity, and has incurred and will continue to incur medical expenses all to her loss and damage.

## COUNT IV

63. All allegations of Counts I, II, and III are incorporated herein by reference as if set forth at length.

64. That Defendants contracted expressly or implied with Plaintiff to manufacture and sell a Ford Explorer that was safe and defect free.

65. The Defendants, in manufacturing and selling the Explorer in a defective condition, such that when driven as intended the airbag would spontaneously deploy when there was no collision, breached its warranty and contract.

66. That as a direct and proximate result of the breach by defendants, the Plaintiff suffered injury and damage heretofore described.

WHEREFORE, Plaintiff prays this Honorable Court grant judgment:

    a. Awarding Plaintiff compensatory damages in such amount as proven at trial;

    b. Awarding costs and attorney's fees of this action;

Together with such other and further relief as to the Court may seem just, equitable, and proper.

Dated: 09/20/2018

/s/ *Robert L. King, Esq.*
The King Law Firm, P.C.
1212 Bjerge Gade Ste. 102
St. Thomas, Virgin Islands 00802
340-776-1014
rlking@attyking.com
V.I. Bar no. 188
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of September, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notification of such filing (NEW) to the following:

Daryl Barnes, Esq.
Barnes & Neil, LLP
1123 King Street, 2nd Floor
Christiansted, VI 00801
dbarnes@barnesneil.com
lgonzales@barnesneil.com

/s/ *Robert L. King, Esq.*