UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MILLENTINE COATES,

            Plaintiff,                             Case No. 20-11509
vs.                                          HON. MARK A. GOLDSMITH

FORD MOTOR COMPANY, et al.,

            Defendants.
_____/

**OPINION & ORDER**
**GRANTING PLAINTIFF'S MOTION TO TRANSFER THE CASE (Dkt. 28) AND**
**DENYING DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS (Dkt.**
**19) WITHOUT PREJUDICE**

Plaintiff Millentine Coates has filed a motion to transfer this case to the District Court of

the Virgin Islands (D.V.I.) (Dkt. 28), from which this case was previously transferred (Dkt. 4).

Under ordinary circumstances, such a motion might well be denied under the law of the case

doctrine. However, in the time since the D.V.I. determined that it did not have personal jurisdiction

over Defendant Ford Motor Company, the United States Supreme Court has decided a case that

renders that decision incorrect. See Ford Motor Co. v. Montana Eighth Judicial District Court,

141 S. Ct. 1017 (2021). Accordingly, the motion to transfer is granted.

## I.    BACKGROUND

Coates alleges that while she was driving her 2002 Ford Explorer on September 22, 2016

in the Virgin Islands, where she resides, the front driver airbag spontaneously exploded, causing

her to crash the vehicle and sustain severe injuries. 2d. Am. Compl. ¶¶ 40–54 (Dkt. 17). She

brings a range of claims arising from this accident, including breach of warranty, negligence,

intentional failure to act, breach of contract, and strict liability. Id. ¶¶ 55-73.

Coates commenced this action in the Superior Court of the Virgin Islands. Id. ¶ 1. It was removed to the District Court of the Virgin Islands shortly thereafter, pursuant to 28 U.S.C. § 1332. Id. ¶ 2. Ford filed a special appearance, preserving its defenses to personal jurisdiction (D.V.I. No. 18-cv-35, Dkt. 25). It also filed a motion to dismiss on the grounds that Ford was not subject to the Virgin Islands' personal jurisdiction (D.V.I. No. 18-cv-35, Dkt. 26). Coates filed a response in which she opposed the motion to dismiss and moved, in the alternative, to have the case transferred to a court located in one of the states where Ford conceded it could be sued: Delaware, its state of incorporation, or Michigan, where Ford's principal offices are located. See Pl. Resp. to Mot. to Dismiss (Dkt. 29-3).

In a memorandum opinion discussed at greater length below, the D.V.I. held that Ford was not subject to the Virgin Islands' personal jurisdiction. See D.V.I Op. (Dkt. 29-4). Noting that Ford had not responded to Coates' request to transfer to case to Michigan or Delaware, it granted that request. Id. at 19–20.

After the case was transferred to this Court, Ford filed a motion to dismiss counts one through four of the complaint (Dkt. 19). In that motion, Ford argues that (i) the Court should apply Michigan choice of law rules as the transferee court, id. at 7; (ii) those choice of law rules dictate that Michigan law be applied, in part because the Virgin Islands lacks personal jurisdiction over Ford, id. at 7–13; (iii) Michigan law does not recognize the claims asserted counts one through three, id. at 18–22; and (iv) count four, as pled, is inconsistent with Michigan law and fails to plead sufficient facts, id. at 22–25.

After the Supreme Court issued its opinion in Ford v. Montana Eighth Judicial District Court, this Court solicited the parties' views on the impact of that case on the motion to dismiss

and on other aspects of this case (Dkt. 25).  Subsequent to that order and a conference, Coates filed

this motion to transfer the case.

## II.    ANALYSIS

Coates asserts that a district court to which a case has been transferred "has the authority

to determine whether a retransfer is necessary and appropriate," subject to the constraints of the

doctrine of law of the case.  Mot. at 10 (Dkt. 28) (citing Moses v. Bus. Card Express, Inc., 929

F.2d 1131 (6th Cir. 1991)).  Indeed, "'[a] court has the power to revisit prior decisions of its own

or of a coordinate court in any circumstance . . . .'" Moses, 929 F.2d at 1137 (quoting Christianson

v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988)).  Ford has not challenged the Court's

authority to retransfer the case under Moses and Christianson, instead advancing several arguments

why the Court should not exercise that authority.  Therefore, the Court proceeds to consider

whether it should retransfer the case based on its authority to revisit the D.V.I.'s previous decision

to transfer the case here.

### A.  The Standard for Revisiting the District of the Virgin Islands Decision

The core of Ford's opposition to this motion is that the case should not be retransferred

where the decision to transfer constitutes law of the case.  Christianson provides the general

framework for evaluating whether retransfer is appropriate in light of law of the case:

> [T]he doctrine of the law of the case posits that when a court decides upon a rule of
> law, that decision should continue to govern the same issues in subsequent stages
> in the same case. . . .
>
> [T]he doctrine applies as much to the decisions of a coordinate court in the same
> case as to a court's own decisions. Federal courts routinely apply law-of-the-case
> principles to transfer decisions of coordinate courts. . . .
>
> A court has the power to revisit prior decisions of its own or of a coordinate court
> in any circumstance, although as a rule courts should be loathe to do so in the
> absence of extraordinary circumstances such as where the initial decision was
> clearly erroneous and would work a manifest injustice.

486 U.S. at 815–817 (punctuation modified, citations omitted).

Coates argues that the clear-error-and-manifest-injustice exception applies. He further argues that another exception to the law of the case applies—namely, that a court may reconsider a previous ruling where a controlling authority decides a contrary rule of law. Mot. at 12 (Dkt. 28). The Sixth Circuit case it cites makes clear that this is an adequate and independent exception to the law of the case:

> The law of the case doctrine precludes our reconsideration of the previously decided issue unless one of three exceptional circumstances exists: the evidence in a subsequent trial was substantially different; controlling authority has since made a contrary decision of law applicable to such issues; or the decision was clearly erroneous, and would work a substantial injustice.

Coal Resources, Inc. v. Gulf & W. Indus., Inc., 865 F.2d 761, 767 (6th Cir 1989.), opinion amended, on other grounds, on denial of reh'g sub nom. Coal Res., Inc., No. 11 v. Gulf & W. Indus., Inc., 877 F.2d 5 (6th Cir. 1989) (punctuation modified, citations omitted).

Ford makes much of the fact that Coal Resources did not involve a transfer, and that the case Coates cites for the same proposition involving a transfer decision, Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509 (10th Cir. 1991), is not from the Sixth Circuit. Resp. at 8–9. It does not present any contrary authority; its argument that the intervening-change-in-law exception should not apply to transfer decisions is Moses's statement that "the law of the case applies 'with even greater force to transfer decisions than to decisions of substantive law.'" Moses, 929 F.2d at 1137 (quoting Christianson, 486 U.S. at 816). But Ford does not explain why the increased "force" with which law of the case must be applied to transfer decisions means that an entire route to proving an exception should be blocked. Furthermore, Chrysler was issued after Christianson. Had Christianson cast doubt on the applicability of the intervening-change-in-law exception, one would expect the Tenth Circuit to have mentioned it. Additionally, Christianson used the phrase "such as" before describing the clear-error-and-manifest-injustice exception, 486 U.S. at 817, implying that that exception was not necessarily the only one.

More importantly, the intervening-change-in-law exception is eminently sensible and deeply rooted in precedent. As Judge Learned Hand wrote nearly a century ago, "it is now well settled that the 'law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense. There can surely be no greater reason for changing our views than because the Supreme Court has directly ruled upon the precise point in the interim." Higgins v. California Prune & Apricot Grower, 3 F.2d 896, 898 (2d Cir. 1924).

To the extent there is even an open question in the Sixth Circuit as to whether the intervening-change-in-law exception to law of the case applies to transfer decisions, the Court is persuaded that it does. Case transfers have consequences, as the elaborate history of contested transfer motions and the vigorous contest in this case attest. So do Supreme Court decisions. There is no reason to think that the Supreme Court did not wish its recent decision regarding personal jurisdiction to have immediate effect on cases such as this one, which has not reached judgment, or even an advanced stage of litigation.

In summary, Coates is entitled to a revision of the D.V.I's decision if she can prove either (i) that intervening law would dictate a different outcome, or (ii) that that court clearly erred and a failure to revise the decision would cause a manifest injustice. She can prove both.

**B. Intervening Change in Law**

The introductory paragraph to Ford v. Montana Eighth Judicial District Court effectively summarizes the cases it adjudicated:

> In each of these two cases, a state court held that it had jurisdiction over Ford Motor Company in a products-liability suit stemming from a car accident. The accident happened in the State where suit was brought. The victim was one of the State's residents. And Ford did substantial business in the State—among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective. Still, Ford contends that jurisdiction is improper because the particular car involved in the crash was not first sold in the forum State, nor was it designed or manufactured there. We reject that argument. When a company like Ford serves a

market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit.

141 S. Ct. at 2022.

Ford v. Montana Eighth Judicial District Court, like this case, involved allegations of specific personal jurisdiction. Contrasting specific jurisdiction with general jurisdiction, which courts in Delaware and Michigan have over Ford, the Supreme Court offered this summary of specific jurisdiction:

> It covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

Id. at 1024–1025 (punctuation modified, citations omitted).

The Supreme Court went on to find that Ford purposefully availed itself of Minnesota and Montana by advertising its cars for sale, having its dealers maintain and repair Ford cars, distributing replacement parts, and generally encouraging "Montanans and Minnesotans to become lifelong Ford drivers." Id. at 1028. Because Ford systematically served a market in the states for the very vehicles that the plaintiffs alleged malfunctioned, the Supreme Court found that there was "a strong relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction." Id. at 1028 (punctuation modified, citation omitted).

The Supreme Court was unpersuaded by Ford's argument that it was not subject to jurisdiction in those cases because "the company sold the specific cars involved in [the] crashes outside the forum states, with consumers later selling them to the States' residents." Id. at 1029.

With some slight twists in fate, Coates's case might have been the third case before the Supreme Court; it presents nearly identical issues. The D.V.I. first considered the Virgin Islands long arm statute, a necessary first step as the court could only exercise jurisdiction over Ford "pursuant to the Virgin Islands long-arm statute, 5 V.I.C. § 4903, and the due process clause of the U.S. Constitution." D.V.I. Op. at 5. It specifically considered § 4903(a)(4):

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory.

D.V.I. Op. at 3, 5 (quoting 5 V.I.C. § 4903(a)(4)).

The court found that Coates had alleged sufficient facts to support a finding that Ford's contacts fell under § 4903(a)(4). Id. at 7. That left the question of whether Coates's claim arose out of those contacts, which, under Virgin Islands law, "is coextensive with the Third Circuit's test under the constitutional jurisdiction doctrine of specific jurisdiction." Id. at 7.

The court then proceeded to the constitutional question. Nearly everywhere the Supreme Court zigged, the D.V.I. zagged. The D.V.I. found it significant (i) that Coates did not purchase the car in the Virgin Islands, (ii) that Coates did not purchase the car directly from Ford, (iii) and that Coates purchased a car that was not designed, manufactured, or sold in the Virgin Islands. Id. at 18. As discussed above, the Supreme Court found corresponding facts irrelevant to the question of whether courts in Montana and Minnesota had specific jurisdiction over Ford.

The D.V.I. was "not convinced that . . . a national advertising campaign alone can establish specific jurisdiction." Id. at 18. By contrast, Ford's national marketing efforts were the driving force behind the Supreme Court's determination in Ford v. Montana Eighth Judicial District Court.

None of this is to disparage the D.V.I.'s thorough and considered opinion. It was presented with a question sufficiently unsettled that the Supreme Court saw fit to resolve it. But as the Supreme Court made abundantly clear, the D.V.I.'s opinion was incorrect.

Ford makes no attempt to distinguish this case from Ford v. Montana Eighth Judicial District Court. That is, it does not argue that the Virgin Islands would lack jurisdiction under the test that case pronounces and employs.

Nevertheless, Ford argues that the intervening-change-in-law exception should not apply, even if available in the Sixth Circuit. Resp. at 8. According to Ford, Ford v. Montana Eighth Judicial District Court did not overturn Walden v. Fiore, 571 U.S. 277 (2014), or Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773 (2017). The D.V.I. opinion relied heavily on those decisions. Therefore, Ford says, Ford v. Montana Eighth Judicial District Court "did not decide a rule of law contrary to the case law relied upon by the [D.V.I.]." Resp. at 8.

Ford identifies no authority for the position that an intervening change in law by a superior court only qualifies as such if it expressly overturns the precedents relied upon in the inferior court decision being challenged. Such a rule would be inconsistent with Coal Resources, which places the focus on issues, rather than the caselaw relied upon in deciding those issues. "The law of the case doctrine precludes our reconsideration of the previously decided issue unless . . . controlling authority has since made a contrary decision of law applicable to such issues . . . ." Coal Resources, 865 F.2d at 767 (punctuation modified, emphasis added, citation omitted). Here, the issue is whether the Virgin Islands has personal jurisdiction over Ford under the circumstances alleged by

the complaint.  When <u>Bristol-Myers Squibb</u> and <u>Walden</u> were the most relevant authorities, this issue was debatable.  Now that <u>Ford v. Montana Eighth Judicial District Court</u> has been decided, the issue is no longer debatable, and the D.V.I's opinion is no longer defensible.  That's an intervening change in law.

Because an intervening change in law has rendered the D.V.I.'s opinion incorrect, it may be revisited as an exception to the law of the case.  Under that authority, the D.V.I.'s opinion is vacated, warranting retransfer.

## C.  Clear Error and Manifest Injustice

Although the intervening-change-in-law exception provides a sufficient basis to retransfer the case, the Court will also consider Coates's claim that the D.V.I. transfer decision was clearly erroneous and resulted in a manifest injustice.

### 1.  Clear Error

Again, Ford does not argue that the D.V.I. decision could stand in light of <u>Ford v. Montana Eighth Judicial District Court</u>.  Instead, it argues that the "transfer decision was not clearly erroneous when it was made."  Resp. at 9.  But it does not explain why that should make a difference.  And here, Ford's argument that <u>Ford v. Montana Eighth Judicial District Court</u> did not actually overturn precedent works against it.  Insofar as that case merely clarified what <u>Walden</u>, <u>Bristol-Myers Squibb</u>, and other cases meant, the D.V.I.'s decision <u>was</u> incorrect when written.  Of course, the law was somewhat unsettled, and the D.V.I. may have been obliged by Virgin Islands or circuit precedent to reach the decision it reached.  But that does not mean its decision was right.

Ford's position would also place this Court in an untenable position.  Law of the case doctrine is premised on the belief that courts should stand behind their prior decisions, or by the

prior decisions of coordinate and superior courts, in the same case. If the Court were to deny this motion, it would be standing behind an incorrect decision, in the present moment. A decision to do so would be clearly erroneous when it was made, even if the D.V.I.'s opinion was not.

Because the D.V.I. opinion is plainly contravened by Ford v. Montana Eighth Judicial District Court, it contained clear error.

### 2. Manifest Injustice

The Sixth Circuit has noted that its cases "do not offer clear guidance as to what qualifies as 'manifest injustice,' but the plain meaning of those words is instructive." Volunteer Energy Servs., Inc. v. Option Energy, LLC, 579 F. App'x 319, 330–331 (6th Cir. 2014). Some examples include a "wrong," "want of equity," or "unfairness." Id. at 331.

Here, the primary injustice would be deprivation of Coates's choice of forum. Ordinarily, district courts owe a high degree of deference to plaintiffs' choice of forum, particularly where plaintiffs have sued in their home forums. See, e.g., Duha v. Agrium, 448 F.3d 867, 873–875 (6th Cir. 2006). The simple fact that the D.V.I.'s error deprived her of her preferred choice of forum in her home territory would seem to constitute manifest injustice. With that said, Coates has provided additional facts constituting manifest injustice. She argues that the witnesses to the accident and the effects of her injuries on her life are all located on the Virgin Islands. Mot. at 19; Coates Aff. ¶¶ 5–8, 10–11 (Dkt. 28-1). She further argues that given her medical condition, it would be extremely difficult to travel, and that she would need to bring along her former husband, who now lives with her and provides round-the-clock assistance. Mot. at 19; Coates Aff. ¶ 9.

Ford downplays Coates's difficulty in travelling by citing medical records indicating that she has been treated at the Cleveland Clinic in Weston, Florida. Resp. at 22; see also Medical Records (Dkt. 29-14). But unlike Michigan residents who travel to Florida, it seems unlikely that

Coates travelled from her home in the Virgin Islands for the beaches and weather. The fact that the injuries allegedly caused by Ford's defective product were so severe that she needed to travel to be treated by one of the world's most reputable hospital systems is hardly a point in Ford's favor. Furthermore, Florida is closer to the Virgin Islands than Michigan is.[1]

Ford also offers a variety of reasons why the Eastern District of Michigan would be a superior forum, including the convenience it and its co-Defendants would enjoy by litigating the case in their home state of Michigan. See Resp. at 14–15, 20–22. Such arguments are of dubious relevance even in the § 1404 context where, at least, the convenience of witnesses and the balance of equities are factors to be considered. See Wayne Cty. Employees' Ret. Sys. v. MGIC Inv. Corp., 604 F. Supp. 2d 969, 975 (E.D. Mich. 2009) ("A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another."). They are of no relevance to a § 1631 transfer, which is only possible where personal jurisdiction in the transferring court is lacking. And the Court is unpersuaded that some prejudice to Defendants counts against the "manifest injustice" Coates has shown. Finally, Ford has argued that technological advances and courts' increasing willingness to utilize tools such as Zoom mean that Coates would not experience manifest injustice by litigating the case in Michigan. But such arguments cut both ways, as Ford too can enjoy the benefits of these technologies and avoid unnecessary travel to the Virgin Islands.

Coates has demonstrated that a manifest injustice would occur if this motion were denied.

---

[1] The D.V.I. did not hold an evidentiary hearing, meaning that Coates was entitled to have her allegations taken as true and have all factual disputes and inferences drawn in her favor. D.V.I. Op. at 3–4. As this Court is reviewing the D.V.I. opinion on its own terms, it applies a similar standard, and it is not moved by Ford's attempts to minimize Coates's alleged limitations.

## D. Forfeiture

Ford argues that Coates's failure to file a motion for reconsideration after the case was transferred should weigh against revisiting the decision now. Mot. at 10-11. However, "a failure to file a motion to reconsider will not result in a waiver or forfeiture of any argument." Hanson v. McBride, 337 F.R.D. 139, 145 (M.D. Tenn. 2020). "Rather, the appropriate time to raise an argument in opposition to a motion is typically in the non-movant's response." Id. Coates vigorously opposed the motion to dismiss, raising arguments that, although unsuccessful for the day, were ultimately validated by the Supreme Court. See Pl. Resp. to Mot. to Dismiss at 1–5. Because the D.V.I. thoroughly and thoughtfully considered those arguments, and because its holding had not yet been contravened by the Supreme Court, a motion to reconsider would have been futile, at best, or frivolous, at worst. When the authority proving her position correct emerged, she promptly filed this motion. Her decision to keep this litigation moving forward should not be punished.

## E. Judicial Estoppel

Relatedly, Ford argues that judicial estoppel bars Coates's argument that the D.V.I. erred. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (punctuation modified, citation omitted). Ford argues that Coates has done so here by prevailing on her argument before the D.V.I. that this case should be transferred to Michigan under § 1631. Resp. at 15–20.[2]

---

[2] Ford also advances the position that Coates should be estoped from arguing positions contrary to her alternative arguments that transfer was warranted under § 1404 and § 1406. Resp. at 15–17. However, because those arguments did not prevail, she is not estopped from contradicting them. See New Hampshire, 532 U.S. at 749–750. Therefore, those aspects of Ford's argument need not be considered any further.

This argument is wrong, and it borders closely on disingenuous. After arguing vigorously (and, it turns out, correctly) that the D.V.I. had jurisdiction, Coates argued in the alternative that the case should be transferred. See Pl. Resp. to Mot. to Dismiss at 6–7. She could not have been clearer that this argument was "a final alternative basis for relief," and not her primary position. Id. at 7.

Coates did not contradict herself. She took the position that if the D.V.I. found jurisdiction to be lacking, she would rather have it transferred to a court with jurisdiction than have it dismissed entirely. That is not the sort of "cynical gamesmanship" judicial estoppel is meant to prevent. See Eubanks v. CBSK Fin. Grp., Inc., 385 F.3d 894, 897 (6th Cir. 2004).

This claim is not barred by judicial estoppel.

### III.    CONCLUSION

The law of the case serves a useful role in preventing coordinate courts from second guessing one another. But when superior courts make clear rulings, guesswork is no longer needed. The Supreme Court has provided an abundantly applicable rule that renders a previous opinion and order in this case inaccurate and obsolete. There is no reason not to follow the Supreme Court's ruling and move forward under the correct rule of law in this case.

Coates's motion to transfer (Dkt. 28) is granted. This case shall be transferred to the District Court of the Virgin Islands. The pending motion to dismiss (Dkt. 19) addresses claims brought under Michigan law and other matters that may need to be reevaluated in light of this transfer decision. Therefore, the motion is denied without prejudice.

SO ORDERED.

Dated: June 1, 2021                                s/Mark A. Goldsmith
       Detroit, Michigan                           MARK A. GOLDSMITH
                                                   United States District Judge